# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 9, 2012

No. 11-60024

Lyle W. Cayce
Clerk

THOMAS EDWIN HORN,

Plaintiff-Appellant

v.

THOMAS E. VAUGHAN, also known as Tommy Vaughan, Yazoo County
Sheriff; SHERRY VAUGHAN; YAZOO COUNTY, MISSISSIPPI,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:09-CV-119

Before JONES, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Thomas Edwin Horn, *pro se* and *in forma pauperis*, brought a § 1983 suit against Sheriff Tommy Vaughan, Sherry Vaughan, Chad Blackstock, Yazoo County, and Yazoo Medical Clinic for violation of his constitutional rights by denying him HIV medication for several months. The trial court dismissed two of the defendants and entered summary judgment in favor of the remaining three defendants. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60024

## BACKGROUND

Horn, 51, was a pre-trial detainee at the Yazoo County Detention Center from August 20, 2007 through August 21, 2008, having been charged with "Rape; Carnal Knowledge of a Child Under 14." Horn, who is HIV positive, received his HIV medication while incarcerated without incident through January 2008. In January 2008, newly elected Sheriff Thomas Vaughan took office and hired a new jail administrator, Deputy Sheriff Chad Blackstock. Horn ran out of medication on February 1st and informed Blackstock. Horn was taken to a doctor on February 21, 2008 and he was prescribed a 21-day supply of Atripla, which was exhausted in late March 2008. Horn did not receive another prescription for HIV medication until August 2008.

One reason for the delay was that the jail changed medical contractors sometime between February and April 2008, and the Yazoo Medical Clinic became the new medical care contractor for the jail. Blackstock informed Horn of the change and told him that a "nurse" from the clinic would interview the patients. The "nurse" turned to be out Sherry Vaughan, the Sheriff's wife, who worked as a clerk at the clinic. Ms. Vaughan conducted an initial interview with Horn in mid-April 2008, but Horn received no medical care for his HIV until August 2008, despite his numerous communications to Blackstock about his condition.

Horn talked to Sheriff Vaughan on only one occasion while he was a prisoner at the jail. Horn told the Sheriff that he needed his medication and the Sheriff told him either that the "nurse" would meet with him and/or to put his name on the sick call list. Sherry Vaughan, who had previously interviewed Horn, did not see Horn again after the conversation. Horn accepted a plea bargain and was transferred to the custody of the state after his August doctor visit but before he received medication. At the state penitentiary he was informed that he had developed an immunity to Atripla and was prescribed a

2

No. 11-60024

second HIV treatment, which, he alleges, caused him to bleed internally. A third treatment was administered, which Horn is tolerating well; his HIV is again "undetectable."

In response to Horn's § 1983 action, the trial court ordered the defendants to produce, among other things, a copy of Horn's medical records. Horn claims that the medical records are incomplete because eleven pages dating from October 2008 through May 2009 are missing. Nevertheless, the court granted summary judgment to Sherry Vaughan because she was only a clerk who lacked the medical expertise or authority to make treatment or medication decisions. The court also granted summary judgment to Sheriff Vaughan and Yazoo County, finding that Horn's constitutional rights were not violated because he suffered no substantial harm.

Horn has appealed these summary judgments but not the court's dismissal of Blackstock and Yazoo Medical Clinic. He asserts that issues of material fact render summary judgment inappropriate and that the district court erred in entering summary judgment when discovery was incomplete. He also charges that the trial court abused its discretion by not appointing him counsel.

## DISCUSSION

1. This court reviews the grant of a motion for summary judgment de novo. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009). Summary judgment is proper if the record discloses "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). As an initial matter, Horn has waived any appeal of the grant of summary judgment to Sherry Vaughan. Issues that are not briefed on appeal are waived. *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993). Even *pro se* appellants must brief arguments to preserve them. *Id.* at 25. The trial court granted summary judgment to Sherry Vaughan in a separate order and for different reasons than the other defendants. Horn,

No. 11-60024

however, neither mentions Sherry Vaughan by name nor challenges in his briefs any of the specific reasons the trial court granted summary judgement for her.

We affirm summary judgment for Sheriff Vaughan and Yazoo County, though for different reasons than those given by the trial court. *See LLEH, Inc. v. Wichita Cnty., Tex.*, 289 F.3d 358, 364 (5th Cir. 2002) ("[This court] may affirm for reasons other than those relied upon by the district court."). As a matter of law, Sheriff Vaughan was not deliberately indifferent and the county is consequently not liable for failing to train or supervise the Sheriff.

Pretrial detainees have constitutional "rights to basic needs such as medical care and safety" that arise under the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). "The episodic act or omission of a state jail official does not violate a pretrial detainee's due process right to medical care . . . unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs." *Id.* at 637-38. Moreover, a delay in medical care must cause "substantial harm" to be a constitutional violation. *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)). The district court held that there was an issue of material fact whether Sheriff Vaughan was deliberately indifferent, but that Horn had not suffered substantial injury.

We disagree that there was a question of material fact whether Sheriff Vaughan was deliberately indifferent. "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To be "deliberately indifferent," the sheriff had to be (1) aware of facts from which an inference of an excessive risk to Horn's health or safety could be drawn and (2) the sheriff actually had to draw an inference that such potential for harm existed. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

4

No. 11-60024

Throughout Horn's stay at the jail, he spoke with the Sheriff on only one occasion about his medication. Requests for medical care were handled by the jail administrator, Blackstock. The evidence does not indicate that Sheriff Vaughan was aware that Blackstock was ignoring or neglecting Horn's requests for medication. Moreover, a representative from Yazoo Medical Clinic did visit Horn. Sheriff Vaughan was in no position to question the clinic's medical treatment of Horn. All the sheriff can do is provide the patient with access to medical care; there is no claim that the Sheriff cancelled any appointments or prescriptions. Because the record contains no evidence supporting the Sheriff's deliberate indifference, summary judgment was proper on that ground alone, and we need not address whether Horn suffered substantial harm. Because the Sheriff did not violate Horn's constitutional rights, even if failure to train a sheriff can afford a basis of § 1983 liability, Yazoo County could not be liable for failing to train or supervise the Sheriff. Finally, Horn provides us no reason to infer that had his medical records been fully disclosed, their information would support his claims against the Sheriff or the county.

2. A trial judge's decision not to appoint counsel for a pro se litigant will only be overturned for a clear abuse of discretion. *Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987). Trial judges are only required to appoint counsel in § 1983 cases if there are "exceptional circumstances." *Id.* The magistrate judge declined to appoint counsel because Horn's pleadings were well presented, the case presented no novel points of law, the claims were straightforward, Horn proved capable of presenting his claims, and the trial court was able to assist in discovery and clarifying the pleadings at the *Spears* hearing.

This court's decision in *Moore v. Mabus*, 976 F.2d 268 (5th Cir. 1992), is distinguishable. The prisoners' HIV discrimination claim in *Moore* required extensive resources to investigate because systemic prison policies regarding HIV management are very complex. *Id.* at 272. *Moore* does not mean that

No. 11-60024

counsel must be appointed in every case where HIV is involved.  The trial court did not abuse its discretion in denying counsel to Horn.

**AFFIRMED.**